UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IBRAHIM FARAG,<br><br>                              Plaintiff,<br><br>                 -v-<br><br>MONEER HANNA, *et al.*,<br>                              Defendants. | 25-CV-5922 (JPO)<br><br>MEMORANDUM AND<br>ORDER TO AMEND |

J. PAUL OETKEN, District Judge:

      Plaintiff Ibrahim Farag brings this *pro se* action, for which the filing fee has been paid. Farag, a former Egyptian attorney, alleges that Defendants maliciously publicized his marriage certificate with another man, obtained in New York City, which led to a series of negative social and legal repercussions in Egypt, including sexual violence at the hands of law enforcement and social isolation and mockery. (ECF No. 1 ("Compl.") at 2.) Farag asserts both state and federal claims, including intentional infliction of emotional distress, misuse of federally issued documentation, violation of equal protection, civil conspiracy, and violation of international human rights obligations. (*Id.* at 3.) For the reasons that follow, Plaintiff is directed to file an amended complaint, on or before September 30, 2025, establishing subject matter jurisdiction of this Court. If Plaintiff fails to do so, this action may be dismissed.

**I.      Legal Standard**

      The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (per curiam)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court also may dismiss an action for failure to

state a claim, "so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013). The Court is obliged, however, to afford *pro se* plaintiffs "special solicitude." *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (internal quotation marks omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* (internal quotation marks omitted).

Federal Rule of Civil Procedure 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* at 678-79. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* at 678. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

**II.      Discussion**

The complaint suggests that the Court may lack subject matter jurisdiction over Plaintiff's claims. Subject matter jurisdiction "defines 'a court's competence to adjudicate a particular category of cases.'" *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006)). The subject matter jurisdiction of the federal district courts is limited

and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when (1) a "federal question" is presented, or (2) the plaintiff and defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)). In fact, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative."). Farag's complaint on its face shows defects with both federal question jurisdiction and diversity jurisdiction.

### A. Federal Question Jurisdiction

To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). While Farag's complaint purports to assert several federal claims, those claims as alleged fail as a matter of law and therefore do not suffice as a basis for federal question jurisdiction.

### 1. Misuse of Federally Issued Documentation

Although Farag alleges that "Defendants unlawfully disclosed and exploited a federal marriage certificate for malicious purposes" (Compl. at 3), the marriage certificate attached in his complaint clearly shows that it was issued by the Office of the City Clerk of New York City (*id.* at 18). Thus, the marriage certificate is a city rather than a federal document, and Farag does not have a cause of action for misuse of federally issued documentation.

### 2. Equal Protection

Farag alleges that "[b]y exposing Plaintiff based on his sexual orientation and marital status, Defendants violated rights" protected under the Fourteenth Amendment of the U.S. Constitution. (*Id.* at 3.) The Equal Protection Clause of the Fourteenth Amendment provides: "[N]or shall any *state* . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added). By its terms, the Fourteenth Amendment "applies only to state action." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009). State action requires "conduct by the United States or a state of the United States or by someone acting under the color of their authority," *Mayer v. Mayer*, No. 11-CV-6385, 2012 WL 441182, at *2 (E.D.N.Y. Feb. 10, 2012), and does not include "actions by foreign government employees or officials," *Tounkara v. Republic of Senegal*, No. 21-CV-8027, 2022 WL 17826422, at *7 (S.D.N.Y. Dec. 20, 2022), *report and recommendation adopted*, No. 21-CV-8027, 2023 WL 2692434 (S.D.N.Y. Mar. 29, 2023). Similarly, "private action is immune from the restrictions of the Fourteenth Amendment, and the Amendment offers no shield against private conduct, however discriminatory or wrongful." *Cooper*, 577 F.3d at 491 (internal quotation marks omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

All the misconduct alleged by Farag, including the exposure of his sexual orientation and the torture and persecution against him, relates to acts of either private individuals or the Egyptian government, not acts by the federal or state government of the United States. The only allegation pertaining to the U.S. government is that "[d]espite knowing the danger, the U.S. Embassy in Cairo stood in silence while the Plaintiff[']s . . . marriage certificate was circulated among Egyptian police stations, courtrooms, and media outlets." (Compl. at 2-3.) Such "mere approval or acquiescence" of private acts does not constitute state action. *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52. Thus, Plaintiff's Fourteenth Amendment claim fails.

### 3. Civil Conspiracy

Next, Plaintiff alleges that "Defendants acted in concert, or with mutual knowledge and silent consent, to destroy Plaintiff[']s reputation, safety, and future." (Compl. at 3.) Construing Farag's complaint liberally, the Court determines that the best fit for his conspiracy allegation is 42 U.S.C. § 1985(3), which prohibits conspiracy to interfere with civil rights. The statute applies to cases where "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C.A. 1985(3).

"Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). To state a claim, the alleged conspirators must have intended "to deprive the plaintiff of a right covered by the Constitution or other laws[.]" *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990). In particular, "the conspiracy [must be] aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (internal quotation marks omitted). As

discussed above, the rights protected by the Equal Protection Clause of the Fourteenth Amendment are only protected against state encroachment. In fact, "[t]here are few such rights" that are constitutionally protected from private encroachment, and only "the Thirteenth Amendment right to be free from involuntary servitude . . . and, in the same Thirteenth Amendment context, the right of interstate travel" have been recognized as rights protected from private incursion. *Bray*, 463 U.S. at 278. Accordingly, "[Section] 1985(3) does not provide a remedy in the case of a purely private conspiracy to deprive individuals of their rights under the . . . [F]ourteenth [A]mendment[]." *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 588 (2d Cir. 1988). Because Farag alleges neither state action nor the deprivation of rights protected against private encroachment, his civil conspiracy claim fails.

### 4. Torture

Plaintiff's last federal claim is that Defendants' "acts led directly to torture, persecution, and dehumanization, violating the Convention Against Torture and related norms." (Compl. at 3.) The Convention Against Torture is implemented in the United States by 8 C.F.R. § 208.18, but this regulation is only for aliens who are in "exclusion, deportation, or removal proceedings"; it does not provide a private right of action against other private individuals. 8 C.F.R. § 208.18(b). Construing the complaint liberally, the Court considers other torture-related federal laws that Farag may have intended to plead a cause of action under. The Alien Tort Statute ("ATS") "provides 'original jurisdiction' in the federal district courts over 'any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States,'" *Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 49 (2d Cir. 2014) (quoting 28 U.S.C. § 1350), but "relief under the ATS for violations of the law of nations occurring outside the United States is barred," *id.* (brackets omitted) (quoting *Kobel v. Royal*

6

*Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013)).  Because the complaint only challenges conduct that occurred outside the United States, it fails to plausibly state a claim under the ATS.

The Torture Victim Protection Act of 1991 ("TVPA"), 106 Stat. 73, note following 28 U.S.C. § 1350, is another federal law that does provide for tort liability against foreign nationals who plaintiffs claim have tortured them.  However, liability under the TVPA is reserved for "individual[s] . . . under actual or apparent authority, or color of law, of any foreign nation."  TVPA § (2)(a).  Courts determine whether a defendant acted under "actual or apparent authority" and "color of law" by looking to "principles of agency law and to jurisprudence under 42 U.S.C. § 1983, respectively."  *Kadic v. Karadzic*, 70 F.3d 232, 245 (2d Cir.1995).  "Under those principles, for purposes of the TVPA, an individual acts under color of law when he acts together with state officials or with significant state aid."  *Chowdhury*, 746 F.3d at 52-53 (cleaned up).  For Defendants to have acted under color of Egyptian law, Farag "must adequately allege that the defendants possessed power under [Egyptian] law, and that the offending actions . . . derived from an exercise of that power, or that defendants could not have undertaken their culpable actions absent such power."  *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009).

For example, in *Chowdhury*, the plaintiff Chowdhury was tortured by a Bangladeshi paramilitary group "at [the defendant] Khan's direction, in order to force him to turn over his business interests in Bangladesh to Khan."  746 F.3d at 46.  Chowdhury's torturers, who electrocuted him and suspended him from a door by his handcuffs, "told him they were acting at the behest of" Khan, and Khan met with Chowdhury's family to state that he "could make the interrogations stop if Chowdhury agreed to transfer his business interests to Khan and leave Bangladesh entirely."  *Id.*  The Second Circuit held that this was sufficient for Khan to be acting under color of Bangladeshi law for purposes of the TVPA.  *Id.* at 53.  By contrast, in *Arar*, the

7

plaintiff alleged that "United States officials conspired to send him to Syria for the purpose of interrogation under torture, and directed the interrogations from abroad" in order to "receiv[e] intelligence learned from the interviews." 585 F.3d at 566. The Second Circuit rejected that TVPA claim, holding that even if "the defendants encouraged or solicited certain conduct by foreign officials," that was "insufficient to establish that the defendants were in some way clothed with the authority" of that state. *Id.* at 568. The TVPA "does not extend liability to parties who provide aid to individuals who commit acts of torture." *Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010), *aff'd*, 770 F.3d 170 (2d Cir. 2014).

Farag has not alleged facts similar to those in *Chowdhury* that can support holding Defendants liable under the TVPA. The complaint includes only conclusory allegations about torture and does not allege a sufficient nexus between Defendants and the Egyptian state for a TVPA claim to survive. There is no indication that the Egyptian police or courts tortured Farag at Defendants' direction, rather than as part of their own law enforcement action. Therefore, absent further allegations showing that the Egyptian government is an agent of Defendants or that Defendants "possessed power under [Egyptian] law," the TVPA does not apply. *Cf. Arar*, 585 F.3d at 568.

### B.    Diversity Jurisdiction

Farag also asserts an intentional infliction of emotional distress claim under state tort law. (Compl. at 3.) And his "Misuse of Federal Documentation" claim, construed liberally, could be a state common law claim for public disclosure of private fact. However, if none of Farag's federal claims survive, subject matter jurisdiction in a federal court can be found only under diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The complaint suggests that Farag is not a United States citizen. (*See* Compl. at 2, 78-79.) Thus, as applicable here, to establish diversity of citizenship jurisdiction under 28 U.S.C.

§ 1332, Plaintiff must allege that the dispute is one between "citizens of a State and citizens or subjects of a foreign state," and that the matter in controversy exceeds $75,000. Importantly, federal courts lack subject matter jurisdiction "over lawsuits between two foreign parties," when there are not also U.S. citizens on both sides of the case. *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020) (per curiam); *Suedrohrbau Saudi Co. v. Bazzi*, No. 21-2307-CV, 2023 WL 1807717, at *2 (2d Cir. Feb. 8, 2023) (summary order) (quoting *Univ. Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002)) ("[D]iversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens."). A permanent resident "is an alien for the purposes of diversity jurisdiction." *Tagger*, 951 F.3d at 126. In other words, if the sole Plaintiff and any of the Defendants are foreign citizens, diversity is lacking, and a federal court has no jurisdiction over this action.

Farag alleges that all of the Defendants "are United States citizens or residents" (Compl. at 3), but the distinction between United States citizens and residents is crucial. Assuming that Farag is a foreign citizen, the Court has diversity jurisdiction over this action only if *all* of the Defendants are United States citizens.

    **C.**    **Leave to Amend**

Plaintiff proceeds in this matter without the benefit of an attorney. Although self-represented attorneys are usually not afforded the "special solicitude" towards *pro se* parties, Farag is allegedly trained in Egyptian rather than American law (Compl. at 2), and thus the Court does not believe he is "experienced in litigation and familiar with the procedural setting presented" in the American system so as to warrant withdrawing the special solicitude for *pro se* litigants. *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). District courts generally grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects unless

9

amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). The Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted).

Because Plaintiff may be able to allege additional facts to state valid claims and establish subject matter jurisdiction, the Court grants him leave to replead his claims in an amended complaint. If Plaintiff seeks to bring claims under the Court's federal question jurisdiction, he must cure the defects discussed in Section II.A and allege additional facts to state a valid federal claim, such as by providing factual support to indicate that Defendants acted under actual or apparent authority, or color of law, of Egypt. If Plaintiff wishes to invoke the Court's diversity jurisdiction, he must clarify in his amended complaint the citizenship of all Defendants, and he may proceed in this Court only if all Defendants are United States citizens.

### III.   Conclusion

For the foregoing reasons, the Court grants Plaintiff leave to file an amended complaint, on or before September 30, 2025, that complies with the standards set forth above. If Plaintiff fails to do so, this action may be dismissed for lack of subject matter jurisdiction without prejudice to refiling in an appropriate court.

The Clerk of Court is directed to mail this Memorandum and Order to the Plaintiff.

SO ORDERED.

Dated: August 19, 2025
    New York, New York

_____
J. PAUL OETKEN
United States District Judge